# STATE OF MICHIGAN

# COURT OF APPEALS

DONALD BERGMAN and SHERRY
BERGMAN,

        Plaintiffs-Appellees,

v

BRYCE R. COTANCHE and BOYNE USA, INC.,

        Defendants-Appellants.

FOR PUBLICATION
February 23, 2017
9:00 a.m.

No. 330438
Charlevoix Circuit Court
LC No. 14-088024-NH

Before: HOEKSTRA, P.J., and SAAD and RIORDAN, JJ.

SAAD, J.

In this negligence action premised on owner liability under the no-fault act, MCL 500.3101 *et seq*., defendants appeal[1] the trial court's order that denied their motion for summary disposition. The trial court, in denying the motion, found that the front-end loader vehicle at issue in this case was not exempt from registration and therefore, was required to be insured under the no-fault act. But because the front-end loader meets the statutory requirements of "special mobile equipment," it was not required to be registered, and the trial court erred when it held otherwise. Accordingly, we reverse and remand.

## I. BASIC FACTS

On December 12, 2012, defendant Bryce R. Cotanche was operating a front-end loader to plow snow in the course of his employment with defendant Boyne USA, Inc. ("Boyne USA"). The front-end loader was not registered with the State of Michigan nor insured under a no-fault insurance policy. To reach his next plow site, Cotanche made a left turn from a private drive onto Deer Lake Road, a public highway. He intended to drive on Deer Lake Road for

---

[1] We granted defendant's application for leave to appeal. *Bergman v Cotanche*, unpublished order of the Court of Appeals, entered March 8, 2016 (Docket No. 330438).

approximately a quarter of a mile to reach his next site. Plaintiff Donald Bergman[2] was driving northbound on Deer Lake Road, and the two vehicles collided.[3]

Plaintiff filed suit against defendants and sought compensation for his injuries. Plaintiff alleged that defendant Boyne USA was liable for defendant Cotanche's negligence because it owned the front-end loader and that Cotanche drove it in the course of his employment. Plaintiff contended that the front-end loader was required to be registered and insured and that the failure to do so entitled plaintiff to a recovery equal to all personal protection benefits paid or payable to permit reimbursement of his insurer under MCL 500.3116 in addition to damages otherwise allowed by law.

Defendants moved for partial summary disposition under MCR 2.116(C)(8) (failure to state a claim) and (C)(10) (no genuine issue of fact) and asserted that the front-end loader was exempt from registration and the resulting requirement to maintain no-fault insurance because the vehicle qualified under the "special mobile equipment" exception of MCL 257.216(c). Plaintiff countered that the front-end loader was a motor vehicle required to be registered and insured. Plaintiff argued that the front-end loader was not exempt under the "special mobile equipment" exception because, although not designed for use on the highway, it was not "incidentally operated or moved on the highway" as required by the exception.

The trial court ultimately concluded that the front-end loader met the first aspect of the test to qualify as "special mobile equipment" because it was not designed or used primarily for the transportation of persons or property. However, the court determined that the second prong was not satisfied because the travel on the public highway to reach plow sites was more than incidental. The court therefore concluded that the "special mobile equipment" exception did not apply and that the law required the front-end loader to be registered and insured. The court also concluded that MCL 257.216(d) provided that special mobile equipment driven on the highway needed special registration and that the front-end loader should have been registered and insured regardless.

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a summary disposition motion to determine if the moving party was entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817. While the trial court did not state which court rule it was relying on when it denied defendant's motion for partial summary disposition, we will review the motion under MCR 2.116(C)(10) because it relied on documentation outside the pleadings. See *Innovation Ventures v Liquid Mfg*, 499 Mich 491, 506-507; 885 NW2d 861 (2016). A "motion under MCR 2.116(C)(10) tests the factual support for a claim and should be granted if there is no

---

[2] Because plaintiff Shelly Bergman's claims are derivative of plaintiff Donald's, for simplicity's sake, we will use the term "plaintiff" in this opinion to refer to Donald.

[3] While not pertinent for our issue on appeal, we note that the responding sheriff concluded that plaintiff was at fault for "driving too fast for the conditions."

genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *MEEMIC Ins Co v DTE Energy Co*, 292 Mich App 278, 280; 807 NW2d 407. "When reviewing a motion for summary disposition under MCR 2.116(C)(10), we consider "affidavits, pleadings, depositions, admissions, and other documentary evidence submitted by the parties in the light most favorable to the party opposing the motion." *Greene v A P Prods, Ltd*, 475 Mich 502, 507; 717 NW2d 855 (quotation marks and citations omitted). The motion "is properly granted if the proffered evidence fails to establish a genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Klein v HP Pelzer Auto Sys, Inc*, 306 Mich App 67, 75; 854 NW2d 521 (2014).

"The interpretation and application of a statute in particular circumstances is a question of law this Court reviews de novo." *Detroit Pub Sch v Conn*, 308 Mich App 234, 246; 863 NW2d 373 (2014).

## III. ANALYSIS

Under Michigan's no-fault act, "[t]he owner or registrant of a motor vehicle *required to be registered* in this state shall maintain security for payment of benefits under personal protection insurance, property protection insurance, and residual liability insurance." MCL 500.3101(1) (emphasis added). "Security is only required to be in effect during the period the motor vehicle is driven or moved on a highway." *Id*. The Michigan Vehicle Code, MCL 257.1 *et seq*., however, exempts certain motor vehicles from registration with the state. One of those exceptions is for "special mobile equipment." MCL 257.216(d).[4] MCL 257.62, in turn, defines "special mobile equipment" as the following:

> *[E]very vehicle not designed or used primarily for the transportation of persons or property and incidentally operated or moved over the highways*, including farm tractors, road construction or maintenance machinery, mobile office trailers, mobile tool shed trailers, mobile trailer units used for housing stationary construction equipment, ditch-digging apparatus, and well-boring and well-servicing apparatus. The foregoing enumeration shall be considered partial and shall not operate to exclude other vehicles which are within the general terms of this definition. . . . [Emphasis added.]

At issue in this appeal is whether Boyne USA's front-end loader qualifies as special mobile equipment that is exempt from registration and the resulting requirement to carry no-fault insurance. Defendant maintains that the front-end loader is special mobile equipment because MCL 257.62 specifies that tractor-like equipment, such as "farm tractors" and "road construction or maintenance machinery," are included in the definition and that the front-load in question clearly is in that family of vehicles. However, our Supreme Court has held "that the

---

[4] Notwithstanding this exemption, [t]he secretary of state may issue a special registration to an individual, partnership, corporation, or association not licensed as a dealer that pays the required fee, to identify special mobile equipment that is driven or moved on a street or highway." MCL 257.216(d).

specifications of that general definition must be found to exist with respect to the enumerated items of equipment if they are to qualify as 'special mobile equipment' entitled to exemption." *Davidson v Secretary of State*, 351 Mich 4, 9; 87 NW2d 131 (1957).[5]  In other words, it is not sufficient for a vehicle to merely be one of the enumerated types of vehicles in MCL 257.62. Instead, the vehicle must *also* satisfy the general definition of special mobile equipment—i.e., it must be a "vehicle not designed or used primarily for the transportation of persons or property and [be] incidentally operated or moved over the highways"—to be entitled to an exemption from the registration requirement.  Therefore, defendants' argument that a front-end loader is *automatically* special mobile equipment by definition is unavailing.

This Court has previously interpreted MCL 257.62 and held that in order for a vehicle to fall under the definition of special mobile equipment,

> the vehicle must be (1) incidentally operated or moved over the highway *and* (2) not designed primarily for transportation of persons or property, *or* (3) not used primarily for transportation of persons or property; the presence of factor (1) along with the presence of either factor (2) or factor (3) will qualify a vehicle for the exemption. [*Auto-Owners Ins Co v Stenberg Bros, Inc*, 227 Mich App 45, 51; 575 NW2d 79 (1997).]

Here, the parties do not dispute, and we agree, that the front-end loader was not designed or used primarily to transport people and equipment, thereby satisfying factor (2).  Therefore, the remaining issue is whether factor (1) is satisfied—whether the front-end loader was "incidentally operated or moved over the highway."

The Motor Vehicle Code does not define the word "incidentally."  The Court's "objective when interpreting a statute is to discern and give effect to the intent of the Legislature." *Book-Gilbert v Greenleaf*, 302 Mich App 538, 541; 840 NW2d 743 (2013).  "Undefined statutory terms must be given their plain and ordinary meanings, and it is proper to consult a dictionary for definitions."  *Halloran v Bhan*, 470 Mich 572, 578; 683 NW2d 129 (2004).  According to *Black's Law Dictionary* (10th ed), "incidental" is defined as "[s]ubordinate to something of greater importance; having a minor role."  This definition matches our understanding of the term and is consistent with established caselaw.

In *Davidson*, the plaintiff used "batching trucks" to deliver concrete from a mixing plant to a nearby highway paving project.  *Davidson*, 351 Mich at 7.  Indeed, "[t]hese trucks [were] *used only for transporting* concrete mix from a mixing plant to a highway location being paved therewith."  *Id*. (emphasis added).  The number of trips the trucks took over public roads "extended at least into the hundreds."  *Id*.  The Court held that the batching trucks were not special mobile equipment because (1) they were designed and used primarily to transport property and (2) their operation over the public roadways was "more than incidental."  *Id*. at 9.

---

[5] Although MCL 257.62 has been modified since the Court made its decision in *Davidson*, the salient portion of the definition remains the same.  Compare MCL 257.62 with *Davidson*, 351 Mich at 6-7.

While the *Davidson* Court did not go into any detail regarding how it concluded that the travel was "more than incidental," we note that because the trucks sole purpose was to *transport*, it follows that its main or primary purpose was to indeed travel on or across public roads. Thus, it cannot be said that the trucks' travel on the roads was subordinate to its purpose or task. Indeed, the travel over the roads—getting from the mixing plant to the construction site—was its main purpose. As a result, it is quite understandable why the *Davidson* Court concluded that the batching trucks travel over the roads was "more than incidental." While the Court noted the trucks took "hundreds" of trips over the public roads, this fact by itself is not dispositive in our view.

In *Stenberg Bros*, the vehicle at issue was a tanker-trailer that was initially designed and built in 1955 to transport liquids in bulk. But since 1987, the tanker-trailer was used "solely as a [stationary] storage tank." *Stenberg Bros*, 227 Mich App at 46. When the defendant leased the tanker-trailer to another corporation, it was pulled over public highways for 15 miles to its destination. *Id.* And when the lease expired, the tanker-trailer was to be returned to the defendant in the same manner. *Id.* at 46-47. The Court held that the tanker-trailer was special mobile equipment that was exempt from registration because it was not used primarily for transportation and was "only incidentally moved over the highway." *Id.* at 51. Although the *Stenberg* Court did not thoroughly analyze the question of incidental movement over the highways or articulate criteria to consider when performing that analysis,[6] it is clear that *Stenberg*'s holding is consistent with our understanding of the term "incidental." At the relevant time, the tanker-trailer's main purpose was to remain as a stationary storage tank, which meant that any movement across and along public roads was minor or subordinate to that larger purpose. Thus, the tanker-trailer was "incidentally operated or moved over the highways."

In *People v Metamora Water Servs, Inc*, 276 Mich App 376; 741 NW2d 61 (2007), this Court addressed whether the defendants' "water trucks" were special mobile equipment and exempt from motor vehicle registration. The defendant was ticketed for failing to register the "water trucks" that it used in the course of its well-drilling business. *Id.* at 377, 378. The Court held that the trucks were not special mobile equipment because (1) the trucks were designed and used for transportation and (2) the fact that the trucks were used on "a daily or almost daily basis" on the public highways "does not satisfy the incidental-usage requirement of the exemption." *Id.* Thus, *Metamora Water* suggests that frequency of operation over public highways can be a relevant inquiry when determining incidental operation on public highways. See also *Davidson*, 351 Mich at 7 (referencing the fact that the trucks made "hundreds" on trips over public roads). But, in addition to the frequency of a vehicle's trips over the highway, we

---

[6] *Stenberg* primarily addressed an apparent inconsistency between the plain language of MCL 257.62 and the *Davidson* Court's interpretation of that statute. The statute includes the phrase "not designed *or* used for the purposes of transporting persons or property." MCL 257.62 (emphasis added). Thus, the statute creates a *disjunctive* relationship between design and use. But a certain passage in *Davidson* supports a *conjunctive* relationship between design and use. *Stenberg*, 227 Mich App at 49-50, citing *Davidson*, 315 Mich at 9. The *Stenberg* Court resolved this issue by concluding that the passage in *Davidson* was dictum. *Id.* at 52.

note that with the main purpose of the water trucks being to transport property over the highway, it also cannot be said that traveling over the highway is incidental, or minor, to that purpose.

Therefore, *Davidson*, *Stenberg*, and *Metamora Water* all support our definition of "incidental" being "[s]ubordinate to something of greater importance; having a minor role." *Black's Law Dictionary* (10th ed). To make this determination, a court must evaluate the totality of the circumstances. We agree with *Davidson* and *Metamora Water* that the frequency and amount a vehicle traverses over the highways is something to consider when deciding if the travel was incidental. But this is merely one factor to consider. Key to any analysis will be the purpose of the vehicle. Otherwise, it will be impossible to truly ascertain if the travel on the public roads was truly incidental to the vehicle's task or purpose.

Here, we hold that Boyne USA's front-end loader meets MCL 257.62's definition of special mobile equipment. As already discussed, there is no question that the vehicle was not designed for nor used for the transport of people or property. Further, viewing the evidence in a light most favorable to plaintiff, we conclude that the front-end loader's travel over the public roads was incidental to its objectives. There was evidence that, during the winter, the front-end loader was used to plow snow at Boyne USA's facilities. When the plowing was complete at the first site, the front-end loader had to travel about a quarter of a mile along a public road in order to reach the second plowing site. We view this travel as incidental to the vehicle's main purpose, which was to plow snow. Although not dispositive, we also believe that the relatively short distance and time that would have been spent on the public road also is indicative of how the main purpose of the vehicle was to plow and how the travel over the roads was indeed minor or subordinate to the plowing purpose. The fact that the plowing occurred somewhat regularly in the winter when snow accumulated does not alter our analysis. The fact remains that, regardless of how frequent, the travel along the public roads was clearly incidental to the more significant plowing tasks that were taking place. Consequently, the trial court erred when it ruled otherwise.

Defendants also argue that the trial court erred when it determined that the front-end loader needed to be registered and insured even if it qualified as special mobile equipment. We agree. As special mobile equipment, the front-end loader was not required to be registered. MCL 257.216(d) specifically exempts special mobile equipment from registration but also provides that "[t]he Secretary of State *may* issue a special registration to an individual, partnership, corporation, or association not licensed as a dealer that pays the required fee, to identify special mobile equipment that is driven or moved on a street or highway." MCL 257.216(d) (emphasis added). The Motor Vehicle Code specifically indicates that the word "may" means that an action is permissive. MCL 257.82. Thus, there is no indication from MCL 257.216(d) that a vehicle qualifying as special mobile equipment is required to be registered; the statute merely allows the Secretary of State to permissively register special mobile equipment that is driven or moved on the highway. Further, the requirement to maintain no-fault insurance is limited to the "owner or registrant of a motor vehicle *required to be registered* in this state." MCL 500.3101(1) (emphasis added). Thus, as long as special mobile equipment does not require registration, as is the case here, it does not have to be covered by no-fault insurance. Accordingly, the trial court erred when it ruled to the contrary.

-6-

We reverse and remand for proceedings consistent with this opinion. We do not retain jurisdiction. Defendants, as the prevailing parties, may tax costs pursuant to MCR 7.219.

/s/ Henry William Saad
/s/ Joel P. Hoekstra
/s/ Michael J. Riordan